
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN RE THE DEPENDENCY OF A.D.R. and M.R.R., | ) ) ) | No. 74351-1-I (Consolidated w/ Nos. 74352-0; 74450-0; 74451-8 |
| STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) ) | DIVISION ONE |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) ) | |
| DANNY AND REINA RIFE, | ) ) | |
| Appellants. | ) | FILED: <u>February 13, 2017</u> |

SPEARMAN, J. — Danny and Reina Rife appeal the trial court's orders terminating their parental rights to M.R. and A.R. Danny[1] contends that the State failed to prove that all necessary and reasonably available services capable of correcting his parental deficiencies in the near future were offered or provided to him as required by RCW 13.34.180(1)(d). Reina contends that the trial court committed reversible error by denying her motion to continue the trial date and by denying her motion to appoint counsel for the children. Finding no error, we affirm.

---

[1] We refer to the Rifes by their first names to avoid confusion. We intend no disrespect.

FACTS

Danny and Reina Rife were married in Washington state and had two children, M.R., born in 2006, and A.R., born in 2007. In 2009, while the Rifes were living in Georgia, Danny was arrested on charges of domestic violence. He later pleaded guilty to cruelty to children for assaulting Reina while the children were present.

While Danny was in custody, Reina took the children and returned to Washington, where she obtained a dissolution decree by default. The dissolution decree included a lifetime no contact order (NCO) prohibiting Danny from contact with Reina and the children. Danny has not seen the children since 2009.

The Department of Social and Health Services (Department) became involved with the Rifes in 2011, when M.R. and A.R. were found alone in a parking lot at 4:00 a.m. Both children exhibited extreme behaviors including physical aggression. M.R. and A.R. were later diagnosed with post-traumatic stress disorder (PTSD). Each child is a trigger for the other's PTSD, causing them to be aggressive with one another. M.R. was also diagnosed with institutional autism, or autistic symptoms caused by early neglect rather than biology.

The Department initiated a dependency petition. In 2012, Reina agreed to an in-home dependency. Danny did not respond to the Department's petition and the children were found dependent as to him by default. The court ordered services for both parents. The court denied Danny visitation because of the NCO.

The children resided with Reina for over a year but were removed from her care in 2013. Danny had not completed any services and was not a possible placement for the children. After the children were removed from Reina's care, Danny participated in some services in Georgia. He often told a Department social worker that he would return to Washington and begin visiting the children, but he failed to do so. Danny cited the NCO as a reason for his continued absence from the children's lives. He also cited his job and the fact that he was on probation as reasons he could not return.

In April 2014, the court held a permanency planning hearing. The court found that Reina was not in compliance with services. The court found that, while Danny had completed some services in Georgia, he could not make further progress toward parenting M.R. and A.R. until he addressed the NCO and outstanding Washington warrants. The court found that adoption was the primary permanence plan for the children. The Department later petitioned to terminate Danny and Reina's parental rights and a termination trial was set for February 2015.

In January 2015, Reina moved to appoint counsel for the children. The trial court denied this motion. But the court granted Reina's motion to continue the trial date to April 2015 to give her attorney additional time to prepare.

Danny returned to Washington in March 2015. The court granted Danny three continuances for trial preparation and eventually set the trial for September 16, 2015. The court expressed concern at the effect of the repeated delays on

3

the children and stated that it would grant no further continuances for trial preparation.

After Danny arrived in Washington, he asked Reina to lift the NCO. Reina had the order lifted in May 2015. In July 2015, Danny filed a motion for visitation. The court ordered Danny to complete the parenting assessment that had been ordered in 2012. The court also ordered Danny to meet with the children's therapists. The order states that visitation is to begin after Danny meets with the therapists and that visits are to be structured and arranged as recommended by the therapists.

Danny met with the children's therapists. After the meeting, the therapists strongly recommended against beginning visitation. The therapists stated that the children had at most a vague memory of Danny and they considered his absence the norm. The therapists recommended against reintroducing Danny into the children's lives shortly before a trial at which his parental rights could be terminated. The therapists stated that meeting Danny would likely trigger heightened symptoms of PTSD. They recommended postponing any introduction until the children were in more stable conditions. The therapists also expressed concern that Danny did not understand the challenges facing the children, had no plan to meet their needs, disowned responsibility for any trauma in the children's lives, and lacked stability in his own life. In the event that the court ordered visitation, the therapists stated that visitation should begin slowly with therapy to mitigate the resulting harm. The Department did not allow Danny to begin visitation.

Danny participated in a parenting assessment with therapist Judith Jindra in September 2015. The assessment normally includes a component based on observation of the parent with the children. A Department social worker instructed Jindra to perform the assessment without a parent-child observation as Danny was not allowed to begin visitation. Based on the assessment she administered, Jindra recommended that Danny take further parenting classes and that he be allowed supervised visitation. But when Jindra learned that Danny had minimized his history of domestic violence, she opined that the process of reuniting Danny with the children would be lengthy and could take years.

About a week before the September trial date, Reina moved for a continuance. Reina had recently begun treatment for acquired immune deficiency syndrome (AIDS) and a related cancer. She requested a trial date at the end of November when she was scheduled to complete her course of chemotherapy. The trial court first denied Reina's motion. But after hearing evidence concerning Reina's health, the court continued the trial until October 19. The court also outlined accommodations to facilitate Reina's presence at the trial in person or by phone.

On October 2, Danny moved the court for an order requiring the Department to allow him visitation. The trial court denied the motion, concluding that it was not in the children's best interest to begin visitation with Danny when the termination trial was set to begin in a few weeks. The court stated that it would reconsider the issue if the termination petition was denied.

Trial began as scheduled on October 19. The court terminated Danny and Reina's parental rights on November 24, 2015. They appeal.

## DISCUSSION

Danny contends that the trial court erred in terminating his parental rights. Washington courts use a two-step process in determining whether to terminate parental rights. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). First, the court considers the fitness of the parent by considering the six elements set out in RCW 13.34.180(1). Id. To determine that a parent is unfit, the court must find that each of these elements has been proved by clear, cogent, and convincing evidence. Id. If the court finds that the parent is unfit, it next determines by a preponderance of the evidence whether termination is in the child's best interests. Id. We will affirm the trial court if its decision is supported by substantial evidence. In re Welfare of C.B., C.R.B., and T.A.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006) (citing In re H.W., 92 Wn. App. 420, 425, 961 P.2d 963 (1998)).

Danny contends that the State failed to establish one of the statutory elements set out in RCW 13.34.180(1).[2] As relevant here, that statute requires proof that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." RCW 13.34.180(1)(d). To satisfy the services requirement, the Department must show that either (1) it offered the

---

[2] We consider Danny's argument although he did not assign error to the trial court's finding that he was an unfit parent.

required remedial services and the parent failed to avail himself of those services; or (2) the parent waived his right to services through words or conduct. In re Welfare of S.V.B., 75 Wn. App. 762, 770, 880 P.2d 80 (1994).

In this case, the trial court found that the Department offered or provided all necessary services. The court also found that Danny completed a parenting assessment after arriving in Washington. Danny argues that the Department did not provide a complete parenting assessment because it ordered the therapist to conduct the assessment without a parent-child observation. And, he asserts, the Department prevented him from following through with the therapist's recommendation that he visit M.R. and A.R.

The Department contends that it offered or provided all necessary and reasonably available services and Danny failed to avail himself of these services. The Department asserts that, after the parenting assessment and other services were ordered in 2012, it referred Danny to service providers and repeatedly urged him to complete services. The Department argues that Danny failed to avail himself of the parenting assessment by not returning to Washington, acting to have the NCO lifted, or seeking to undergo a parenting assessment until 2015.

We agree with the Department. Danny's argument rests on his inability to complete the parent-child component of the parenting assessment in September 2015. But the parenting assessment was ordered in January 2012. Danny does not dispute that, throughout the children's dependency, he was in contact with a Department social worker who referred Danny to service providers in Georgia and urged him to return to Washington to complete further services. In April

7

2014, the court advised Danny that he could not make further progress toward parenting the children until he returned to Washington and addressed the NCO. Danny failed to return to Washington until March 2015, nearly a year after the court found that adoption was the primary permanence plan for the children and nearly a month after the termination trial was originally scheduled. Danny did not petition for visitation or seek to participate in a parenting assessment until July 2015. Undisputed evidence supports the conclusion that the Department offered Danny all necessary services and he failed to avail himself of those services for three and a half years.

Danny contends that this result is untenable because he did not have the ability to avail himself of services. He asserts that he was legally prohibited from contact with his children and thus could not undergo the full parenting assessment until May 2015 when the NCO was lifted. He challenges the trial court's finding that his absence from the children's lives for over six years was a conscious decision.

At trial, Danny cited numerous reasons for not attempting to visit the children until 2015. As to the NCO, Danny stated that Reina had it lifted in May 2015. Danny makes no argument that he attempted to have the NCO lifted earlier.[3] Danny also gave additional reasons to explain his absence. He testified that he could not return to Washington prior to 2015 because he was too busy at

---

[3] In his testimony, Danny stated that he "believed" he asked Reina to lift the NCO prior to his return to Washington, but he did not know how she responded. Verbatim Report of Proceedings (VRP) (9/17/15) at 138. He later said that he did not recall if he had asked her to lift the NCO prior to May 2015. He admitted that Reina had obtained other NCOs that "went away" because she lifted or ignored them. VRP (9/17/15) at 152-54.

work, he did not have enough money, and his Georgia probation did not allow him to travel. He also testified that he had a good job in Georgia, never asked for time off to visit the children, and routinely traveled to other states despite the Georgia probation.

The trial court found that Danny's "explanations for not attempting to re-unite with [M.R. and A.R.] sooner are not credible." Clerk's Papers (CP) at 3400. Because his explanations were not credible, the court found that Danny's absence from the children's lives for over six years was "a conscious decision he chose to make." CP at 3400. We defer to the trial court's findings as to credibility. In re C.B., 134 Wn. App. at 953. Regarding the NCO, the trial court rejected it as a reason for Danny's absence and found that "the NCO was lifted with virtually no effort from [Danny]. . . ." CP at 3400. Danny does not contest this finding. In light of these findings, we reject Danny's argument that he could not avail himself of a parenting assessment with a parent-child observation prior to May 2015.

But even if we were to accept Danny's argument that he could not avail himself of the service prior to May 2015, we would reach the same result because, at that point, the service would have been futile. The Department is only required to provide those services "capable of correcting the parental deficiencies within the foreseeable future. . . ." RCW 13.34.180(1)(d). Even if the Department fails to offer services to a willing parent, termination is appropriate if the services would not have remedied parental deficiencies within the foreseeable future. In re Dependency of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001) (citing In re Welfare of Hall, 99 Wn.2d 842, 664 P.2d 1245 (1983)).

9

The "foreseeable future" is determined in reference to the age of the child. Id. When the record establishes that the offer of services would be futile, the trial court may make a finding that the Department has offered all reasonable services. In re Welfare of M.R.H. and J.D.F., 145 Wn. App. 10, 25, 188 P.3d 510 (2008) (citing In re Welfare of Ferguson, 32 Wn. App. 865, 869-70, 650 P.2d 1118 (1982), rev'd on other grounds, 98 Wn.2d 589, 656 P.2d 503 (1983)).

Here, the evidence was undisputed that introducing the children to Danny would be a lengthy process. A.R.'s therapist testified that it could take six weeks or longer for A.R. to progress from receiving a letter from Danny to sending a letter back. Danny stated that he wanted both children to live with him but the children's therapists stated that it would be a matter of years before M.R. and A.R. could live together. The social worker testified that, even in a best case scenario, it would not be possible for the children to live with Danny in the next six months. After learning that Danny had minimized his history of domestic violence, Jindra testified that reunification, if possible at all, would be a lengthy process that could take years.

We conclude that completing the parent-child observation was not a service capable of correcting Danny's parental deficiencies within the children's foreseeable future. When the record establishes that the offer of services would be futile, the trial court does not err in finding that the Department has met the services requirement. M.R.H., 145 Wn. App. at 25.

Danny challenges two further findings of fact related to his fitness as a parent. He assigns error to the trial court's findings that the children do not know

him and consider the absence of their father to be normal. As to these findings, Danny testified that he had not seen the children since 2009. M.R.'s therapist testified that M.R. knows Danny's name but has no memory of him. A.R.'s therapist testified that A.R. is curious about who her father is and what he is like. The therapists both stated that the children view Danny's absence as the norm, not a loss. We conclude that substantial evidence supports the trial court's findings that the children do not know Danny and consider his absence the norm.

Danny also assigns error to three of the trial court's findings regarding the children's best interest. He asserts that it was premature for the trial court to consider the children's best interest because the State failed to establish that the Department satisfied the services requirement. But because the trial court did not err in finding that the Department offered or provided necessary services, we reject this argument. We affirm the trial court's order terminating Danny's parental rights.

Reina also seeks reversal of the trial court's decision to terminate her parental rights. She first contends that the trial court erred in denying her motion to continue the trial date.

The termination trial was originally scheduled for February 2015. The trial court granted four continuances for trial preparation and eventually scheduled the trial for September 16, 2015. In July 2015, Reina was hospitalized and began treatment for AIDS and a related cancer. On September 10, 2015, Reina moved to continue the trial until the end of November or beginning of December, when she was scheduled to complete her course of chemotherapy. Reina primarily

argued that, due to the length of the dependency and the amount of discovery, counsel required Reina's presence in court to provide adequate representation. She also asserted that she had a right to be present.

In an attached declaration, Reina stated that she was being treated for multiple cancerous tumors. She described heart palpitations and panic attacks as symptoms of her chemotherapy. She stated that because of her compromised immune system she was at risk of contracting life-threatening infections. Reina also attached brief statements from two of her doctors. Her primary care doctor, Corinne Heinen, stated that "[g]oing through court proceedings at this time would endanger [Reina's] health." CP at 3007. Another doctor stated that it would be best for Reina's health to postpone the trial until she completed chemotherapy.

The trial court first denied Reina's motion. The court expressed concern for Reina's condition but also took into account the children's need to have the termination petition resolved. The court noted that Reina's current attorney had been on the case since December 2014 and ruled that there was no basis to continue for trial preparation.

As to Reina's health, the court found that there was no way to know whether Reina would be well enough to participate in trial in late November. Considering this uncertainty against the children's need for permanence, the court found that the needs of the children outweighed Reina's request to delay trial until she was well. The court stated that it would accommodate Reina's presence by telephone, provide recesses for counsel to consult with Reina by telephone, and provide additional recesses as necessary to allow Reina to rest

12

when fatigued. The court directed the parties to consider whether Reina's testimony should be presented by way of deposition rather than in person.

The day after the motion hearing, the court requested evidence on Reina's prognosis. The court stated that its primary reason for denying the continuance was that there was nothing to indicate that Reina would be healthy in a reasonable period of time. In response, Reina presented testimony from Heinen, her primary care physician.

Heinen expressed optimism about Reina's prognosis. She stated that Reina's cancer had not metastasized, her tumors had greatly decreased, and her immune system had markedly improved. When asked why being in the courtroom would be detrimental to Reina's health, Heinen responded that Reina was anxious about the trial and had experienced panic attacks. She also stated that stress could affect Reina's immune system. The court asked whether the side effects of Reina's chemotherapy were cumulative, so that she would feel worse as she continued her treatment. Heinen responded that Reina's course of chemotherapy was not likely to have that effect.

The court then stated that it was "a little confused as to why [Reina] couldn't be in a courtroom now other than the stress." VRP (9/17/15) at 54. Heinen replied that Reina was in the process of tapering off pain medication and her panic attacks were not yet fully under control. Id. She opined that Reina would present herself better after those issues were resolved. Id. Heinen stated that it would likely take six to eight weeks to bring the panic attacks under control and finish tapering off pain medication.

13

The court noted that Reina's declaration appeared inconsistent with the doctor's testimony. Reina was not available by phone to answer questions. The court stated that, because the effects of Reina's chemotherapy were not cumulative, it was not convinced to continue the trial until after Reina completed the course of chemotherapy. The court continued the trial about four weeks to allow Reina time to address the panic attacks and to taper off the pain medication.

Reina contends that the trial court erred in denying her motion.[4] She asserts that this denial violated her due process rights and is thus an issue that we review de novo. Reina relies on In re Welfare of L.R., 180 Wn. App. 717, 723, 324 P.3d 737 (2014). But the parent in L.R. did not challenge the denial of her motion for a continuance. Id. Washington courts have long held that the trial court's decision to grant or deny a continuance is reviewed for abuse of discretion. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (citing, inter alia, Skagit Ry. & Lumber Co. v. Cole, 2 Wash. 57, 62, 65, 25 P. 1077 (1891)). We will not disturb the trial court's decision absent a clear showing that it was manifestly unreasonable or based on untenable grounds. Id. (citing State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

In this case, the trial court held that, as Reina's counsel had been on the case for nearly a year, there was no basis to continue for trial preparation. The trial court also considered Reina's health, her representation by counsel,

---

[4] Although Reina argues that the trial court denied her motion, we note that the trial court, in fact, granted it in part. While Reina sought a continuance of about ten weeks, instead the trial court granted a continuance of about four weeks.

accommodations to facilitate Reina's presence in person or by phone, and the children's need for permanence. The trial court granted Reina a four-week continuance rather than the ten weeks she requested. The trial court's decision is not manifestly unreasonable or based on untenable grounds. There was no abuse of discretion.

Reina argues, however, that the trial court's decision in this case was a violation of due process. The denial of a continuance may rise to the level of a constitutional violation "'within the circumstances of a particular case.'" Downing, 151 Wn.2d at 274 (quoting State v. Williams, 84 Wn.2d 853, 855, 529 P.2d 1088 (1975)). In considering whether the trial court's decision on a motion to continue was constitutional error, courts look to whether the decision resulted in prejudice and whether the result of the trial would likely have been different if the continuance had been granted. State v. Eller, 84 Wn.2d 90, 95, 524 P.2d 242 (1974) (citing, e.g., State v. Derum, 76 Wn.2d 26, 28, 454 P.2d 424 (1969)). See also Downing, 151 Wn.2d at 275-76 (holding that there was no constitutional error where the denial of a motion to continue prevented the defendant from calling a witness but the witness's testimony would not have changed the result of the trial).

Reina contends that, by not providing a longer continuance, the trial court violated her due process right to be present at trial. She asserts that, in the particular circumstances of this case, her presence in court was necessary in order for counsel to provide adequate representation.

15

We reject this argument. Due process requires that a parent have notice, the opportunity to defend, and the right to be represented by counsel. L.R., 180 Wn. App. at 723 (citing In re Welfare of S.E., 63 Wn. App. 244, 250, 820 P.2d 47 (1991)). It does not guarantee an absolute right to attend a termination proceeding. In re Dependency of J.W., 90 Wn. App. 417, 429, 953 P.2d 104 (1998) (citing State ex rel. Taylor v. Dorsey, 81 Wn. App. 414, 421, 914 P.2d 773 (1996)).

Reina was represented by counsel throughout the termination trial. Reina was present in person or by phone for the majority of the trial. At oral argument, she contended that it was impossible to know what errors may have occurred when she was not present. However, Reina does not assign error to any of the trial court's findings of fact and she does not point to any portion of the trial that would have been different had the trial court granted a longer continuance. Nor does she argue that the result of the trial would have been different if the trial court had granted a longer continuance or identify with any specificity how she was prejudiced by the trial court's decision. Accordingly, we conclude that the trial court's decision to continue trial for four weeks instead of ten weeks, as Reina requested, did not violate her constitutional rights.

Reina next asserts that the trial court erred by denying her motion to appoint counsel for the children.[5] She contends that the trial court violated the

---

[5] The court-appointed special advocate (CASA) filed a brief on appeal addressing this issue. Although the CASA failed to seek permission in advance, we grant permission for the brief under RAP 10.1(h).

children's right to due process under both the federal and the Washington constitution. We first address her federal due process claim.

The Washington legislature has given the trial court discretion to appoint an attorney to a child in a dependency action. RCW 13.34.100(7)(a).[6] The Supreme Court rejected a due process challenge to this provision in In re Dependency of M.S.R., 174 Wn.2d 1, 271 P.3d 234 (2012).[7] The M.S.R. court held that, while federal due process may require the appointment of counsel in the specific circumstances of some cases, it does not provide a universal right to counsel.[8] Id. at 21-22. In exercising its discretion to grant or deny a motion to appoint counsel, the trial court must balance the three factors of a due process analysis: (1) the private interests at stake; (2) the risk of error created by the procedure used; and (3) the State's interests. Id. at 22. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (setting out the due process analysis).

The M.S.R. court held that, in a termination proceeding, a child's fundamental liberty interests include an interest in maintaining relationships with parents and siblings, the right to reasonable safety, and an interest in not being

---

[6] Because the appointment of counsel is within the discretion of the trial court, we review the decision for abuse of discretion. Rivers v. Washington State Conference of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002) (citing Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)).

[7] The M.S.R. court considered former RCW 13.34.100(6)(f) (2010), which granted the trial court discretion to appoint counsel to a child who was at least twelve years old. Id. at 12. The statute has since been amended to allow the trial court discretion to appoint counsel to a child of any age. RCW 13.34.100(7)(a).

[8] The M.S.R. court did not separately consider the statute under the Washington constitution because the issue was not properly briefed. Id. at 20 n.11.

17

returned to an abusive environment. Id. at 20. The State's interests are similar.

Id. The risk of error depends on the particular circumstances of each case,

including whether someone in the case is able to represent the child's interests.

Id. at 18. The child's age and her ability to express a position on issues before

the court are also relevant. Id. at 21.

In this case, the trial court considered each of the due process factors.

The court found that the children and the State both had significant interests at

stake. In the particular circumstances here, the court found no indication that the

appointment of counsel would increase the children's welfare. The court noted

that M.R. and A.R. were very fragile and that it was necessary to exercise care in

questioning them. The court found that the court-appointed special advocate

(CASA), who had been active in the case for many years, had the children's

trust. The court directed the CASA to try to subtly "figure out what the kids want."

VRP (2/13/15) at 24. The court also stated that, given the children's age, their

wishes would be a very minor factor for the court to consider if the State proved

that the parents were unfit. The court later clarified that the weight to be given to

the children's wishes at trial was a question for the factfinder to evaluate

considering the totality of the information before the court.

Reina argues that the trial court failed to properly balance the three

factors. She asserts that, in this case, the children's interest was particularly

strong because of the prolonged dependency and the seriousness of the

children's mental health issues. However, the trial court did not discount the

children's situation. The trial court recognized that the children's interests include

18

safety and maintaining relationships with their biological family. And the court repeatedly emphasized the need to provide permanence for the children. The trial court properly considered the first factor.

Reina also argues that, in this case, the risk of error was particularly high because the trial court did not know what the children wanted. She contends that the CASA did not adequately represent the children's interests because she did not elicit their wishes as to the termination of Danny and Reina's parental rights. She asserts that the children were capable of expressing their feelings about the degree of contact they wanted with their parents and that an attorney would have argued for this position.

We reject this argument. The trial court has discretion to determine whether representation is adequate. Marquardt v. Fein, 25 Wn. App. 651, 657, 612 P.2d 378 (1980) (citing National Ass'n of Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340 (D.C. Cir. 1976)). The trial court in this case considered the children's ages and mental health, the representation of the CASA, and the issues before the court. The court did not abuse its discretion in finding that counsel would not increase the children's welfare.

The trial court applied the appropriate legal standard to Reina's motion to appoint counsel for the children. Its decision is not manifestly unreasonable. There was no abuse of discretion.

Reina next contends that M.R. and A.R. were entitled to counsel under the Washington constitution. She argues that article I, section 3 provides broader due process protections than the Fourteenth Amendment. She therefore asserts

19

that the Washington constitution mandates the appointment of counsel to all children in termination proceedings.[9]

Reina's argument challenges the constitutionality of RCW 13.24.100(7), which grants discretion to trial courts to appoint counsel on a case-by-case basis. Where a case can be decided on non-constitutional grounds, we refrain from reaching the constitutional issue. Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wn.2d 740, 752, 49 P.3d 867 (2002) (citing, inter alia, State v. Speaks, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992)). Constitutional error does not require reversal where the error was harmless beyond a reasonable doubt. State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013) (citing Neder v. United States, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

We decline to reach Reina's state constitutional challenge in this case because, even if the trial court's decision not to appoint counsel violated the children's rights under the Washington constitution, the error was harmless beyond a reasonable doubt. Reina does not challenge the trial court's findings that she is unfit to parent the children or that termination is in the children's best interests. Even if the children wished to return to Reina's care and an attorney had advocated for this position, the unchallenged findings would still support termination.

---

[9] Reina also argues, without support, that article I, section 3 requires a different balancing of the due process factors described above. We reject the argument as unsupported. Somer v. Woodhouse, 28 Wn. App. 262, 270, 623 P.2d 1164 (1981) (citing Griffin v. Department of Social & Health Servs., 91 Wn.2d 616, 630, 590 P.2d 816 (1979)).

No. 74351-1-I/21 (Consolidated w/
Nos. 74352-0; 74450-0; 74451-8

Affirmed.

WE CONCUR:

_____                    _____
Leach, J.                                           Spearman, J.

_____
Appelwick, J.

21