[No. 26833-7-II.   Division Two.   June 7, 2002.]

*In the Matter of the Adoption of* B.T.

*Gary A. Preble*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Timothy M. Jaasko-Fisher, Assistant*, for respondents.

BRIDGEWATER, J. — Dorothy and Gary Avery appeal a superior court order dismissing their petition to adopt their granddaughter, B.T. We reaffirm the presumption favoring grandparents in a custody decision against someone other than a parent and hold that this presumption maintains in adoption proceedings. Further, grandparents have standing to maintain an adoption proceeding regardless of whether the child has been placed with the grandparents in the past or whether the Department of Social and Health Services (DSHS) consents. We reverse and remand for a full evidentiary hearing consolidated with any other adoption petition, so that the court can determine the best interests of the child, B.T.

Dorothy and Gary Avery are the paternal grandmother and stepgrandfather of B.T. The Averys currently reside in Arkansas, where Mr. Avery is employed, but they plan to return to Washington in the future.

B.T. was born in August 1995. In April 1998, the State removed B.T. from her mother's care. Since then, B.T. has lived with her foster mother, Bambi Sotak. Ms. Sotak is the sister of B.T.'s mother's boyfriend and the aunt of B.T.'s half brother, K.Y.

Starting in May 1998, Mrs. Avery contacted various DSHS caseworkers and administrators in hopes of obtain-

ing placement of B.T. Mrs. Avery's efforts were unsuccessful and many of her letters and telephone calls went unanswered. Prior to May 1998, the Averys remained in contact with B.T.'s mother, offering support whenever they could.

Eventually, the State commenced dependency and termination actions concerning B.T. Subsequently, in March 2000, Mrs. Avery filed notice of her intent to attend all dependency and termination hearings and to adopt B.T. following termination.

DSHS denied the Averys' pretermination request to have B.T. placed in their home. At that time, DSHS was still attempting to reunite B.T. with her mother, so placing her with the Averys in Arkansas was not reasonable.

In April 2000, the court denied the Averys' motion to intervene in the termination action. In June 2000, however, the Averys obtained orders granting them interested party status in both the dependency and termination, requiring that they be given written notice of any hearing or proceeding in such matters, and permitting them to attend such hearings and proceedings.

In July 2000, B.T.'s parents' parental rights were terminated. Contrary to the June 2000 order, the Averys did not receive notice of any hearings regarding B.T., except for a termination hearing that did not occur on the scheduled date.

Next, the Averys asked DSHS to place B.T. with them. DSHS did not return telephone calls from the Averys or their attorney. Consequently, the Averys filed a petition to adopt B.T. in August 2000. Ms. Sotak filed her own petition to adopt B.T. in October 2000.

Also in October 2000, the superior court heard argument on the Avery and Sotak adoption petitions. The Averys sought an evidentiary hearing at which the court would determine whether they should be considered for adoption instead of Ms. Sotak. The State argued that the issue was a legal question and did not require an evidentiary hearing.

Ultimately, the superior court dismissed the Averys' adoption petition and granted the petition of Ms. Sotak. The court ruled that under Washington case law, the Averys lacked standing to maintain their adoption petition.

The Averys filed a motion for reconsideration in November 2000, which the superior court denied in December 2000. No final adoption order has been filed; thus, B.T. is still dependent.

## I. Grandparents preference in adoption

The Averys claim that after termination of parental rights, grandparents are favored in placement decisions unless the child's welfare requires otherwise. Washington case law supports their position.[1] The preferential rights accorded to grandparents, however, are subordinate to the child's right to have his or her best interests and welfare protected. *In re Welfare of Schulz*, 17 Wn. App. 134, 144, 561 P.2d 1122 (1977).

The Averys further claim that, as B.T.'s natural guardians, they are entitled to her custody. For this position, the Averys rely on *State ex rel. Michelson v. Superior Court*, 41 Wn.2d 718, 251 P.2d 603 (1952). In *Michelson*, a grandmother sought custody of her grandchild after the superior court terminated his parents' rights. The superior court decided that the child's welfare would be best served by placing him for adoption, not by awarding his custody to the grandmother. *Michelson*, 41 Wn.2d at 719-20. In reaching its decision, the superior court considered a number of factors, including the grandmother's tuberculosis and that further delay, in light of the child's advancing age, would

---

[1] *See In re Welfare of Schulz*, 17 Wn. App. 134, 143, 561 P.2d 1122 (1977) ("Grandparents will ordinarily be favored in custody proceedings against those other than parents, but such preference does not prevent the grandparents' claim from being rejected when the paramount consideration of the child's welfare requires it."); *In re Welfare of Maurer*, 12 Wn. App. 637, 640, 530 P.2d 1338 (1975) (Division Three of this court found it was in the best interests of two children, that their grandparents "be heard as to their fitness, and the propriety of placing the children in their custody before summarily granting custody to those other than blood relatives." (citations omitted)).

make his permanent placement "progressively more difficult." *Michelson*, 41 Wn.2d at 720. (The superior court also found that the grandmother "was a woman of unquestioned integrity and high moral character, [and] that she had great love for the child." *Michelson*, 41 Wn.2d at 719.) The Supreme Court held:

> We are of the opinion that, when the parents of the child were permanently deprived of custody, its grandmother became its natural guardian and *entitled* to its custody if she was found to be a fit and proper person and was capable of caring for and maintaining the child.

*Michelson*, 41 Wn.2d at 721 (emphasis added). The court also accepted that natural guardianship—a principle designed to maintain the family structure—should be applied unless clearly inconsistent with the child's welfare. *See Michelson*, 41 Wn.2d at 721.

Our Supreme Court remanded the case for further consideration because of the grandmother's claims that the superior court did not properly consider her natural guardianship and that her health would allow her to be a proper guardian. *Michelson*, 41 Wn.2d at 723. The court also limited this notion of natural guardianship to "grandparents," and not all next of kin, leaving that for another day. *Michelson*, 41 Wn.2d at 722.

*Michelson* defines the grandparents' position after termination. Washington case law thus upholds the natural guardianship of grandparents and a preference for grandparents' custody following termination.

## II. Statutory Basis

Nothing in the statutes is inconsistent with the above case law. The Legislature has expressed itself as to family relationships:

(1) RCW 13.34.020 states as follows:

> [T]he family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this

principle, the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized.

(2) RCW 13.34.060(1)(a) provides that placement with a relative may occur at the "shelter care" hearing, thus providing support for a preference for extended family members for placement at the first stage of dependencies.

(3) RCW 13.34.210 requires a court to commit a child after termination with DSHS or an adoption agency; but there is no requirement as to who may adopt.

III. *In re Dependency of G.C.B.*

In dismissing the Averys' adoption petition, the superior court relied on dicta from *In re Dependency of G.C.B.*, 73 Wn. App. 708, 870 P.2d 1037, *review denied*, 124 Wn.2d 1019 (1994). There, Division One of this court held that after termination of parental rights, a parent lacks standing to adopt their dependent child. *G.C.B.*, 73 Wn. App. at 716-17.

In dicta, Division One "surmise[d] . . . that it is ordinarily the prerogative of [DSHS] or [a] child-placing agency to designate prospective adoptive parents for a particular child."[2] Further dicta defined "prospective adoptive parent" status—namely, three means by which a party may obtain standing to petition to adopt a child:

> [W]hen a child has been committed to the care of an agency for the purpose of adoption planning, a would-be petitioner may maintain an adoption proceeding only in two circumstances: (1) if the custodian consents; or (2) when consent is not forthcoming, then only if the child had been at some point placed in the would-be petitioner's care.

There may be other circumstances in which one who lacks agency sponsorship may obtain leave to file a petition. The

---

[2] *G.C.B.*, 73 Wn. App. at 719; *see also G.C.B.*, 73 Wn. App. at 721 ("Having been made the legal custodian of the child with the express right to place the child in a prospective adoptive home and the right to terminate such placement, [DSHS] has equal authority to *withhold* placement in the first instance.").

burden should be on that party to convince a trial court that the custodian's preadoptive planning, entitled to a presumption of correctness, is so utterly devoid of merit as to constitute an arbitrary and capricious exercise of authority, or that the custodian has abdicated its authority by failing to take any preadoptive planning measures whatsoever.

*G.C.B.*, 73 Wn. App. at 722-23 (footnote omitted).

Here, the superior court found that the Averys were not prospective adoptive parents as defined by *G.C.B.* In other words, the superior court dismissed the Averys' adoption petition for lack of standing.

The unchallenged findings of fact include that DSHS is B.T.'s custodian, that DSHS did not consent to the Averys' adoption of B.T., and that B.T. has never been placed with the Averys. These findings are verities on appeal. *Tomlinson v. Clarke*, 118 Wn.2d 498, 501, 825 P.2d 706 (1992). Thus, under *G.C.B.*, to obtain standing to adopt B.T., the Averys must prove that DSHS's preadoptive planning was arbitrary and capricious.

The Averys contend that DSHS was arbitrary and capricious in that it "showed an almost studied intention to disregard [their] request" to adopt B.T. and overlooked significant evidence of Ms. Sotak's purported history of "adversarial" relationships, "abusive" ex-husbands, and "manipulating and using young children for her own purposes." Br. of Appellant at 31. But DSHS points to evidence that its preadoptive planning was not arbitrary and capricious. For example, in her oral ruling, the superior court judge stated that it was "clear that [DSHS] considered placement with [B.T.'s] half siblings important and considered the biological mother's request that the siblings be kept together as important." Report of Proceedings at 85.

It appears that B.T. has four half siblings: K.O., B.R., K.Y., and A.L. B.T. has been with Ms. Sotak since April 1998, B.R. since March 1999, and K.O. since May 1999. Ms. Sotak has already adopted B.R. and K.O. K.Y. and A.L. live with Ms. Sotak's mother, three blocks away.

But we disagree with *G.C.B.* to the extent that it limits standing to only three conditions because it does not take into account the Supreme Court's holding in *Michelson*. We hold that there is another condition, "natural guardianship." *Michelson*, 41 Wn.2d at 722. That is, if the natural guardians, the grandparents, wish to adopt, they too are to be given a preference and have standing.

The harm in giving DSHS the sole authority to determine who can file petitions can be seen in this case. (We note that their bare consent is all that is necessary under the rule, without any procedural requirements.) Here, early in the proceedings, DSHS decided to place B.T. in a home where one of her half siblings had been adopted. The subsequent events that deprived the Averys of contacts with their granddaughter resulted in their exclusion from consideration as adoptive parents because of the lack of history of recent contacts, and, thus, the absence of a relationship with B.T. Thus, because of DSHS's earlier decision not to place B.T. with the Averys, they had to rely on the largesse of DSHS to even present evidence supporting their petition to adopt. Consequently, even under *G.C.B.*, we view DSHS's conduct as arbitrary and capricious. Several factors enter into our decision:

(1) A home study approved by the State of Arkansas under the Interstate Compact for the Placement of Children (ICPC) recommended the Avery home for B.T.'s placement;

(2) Mrs. Avery made multiple attempts at placement by asking DSHS that B.T. be placed with her beginning as early as July 28, 1998;

(3) Even though the court permitted Mrs. Avery to appear as an interested party and ordered that she receive written notice of all hearings and legal proceedings in the dependency and termination case, DSHS never gave her any notice of any hearing that occurred.

These factors suggest that the Averys were appropriate caregivers and, in the words of *Michelson*, were "found to

be . . . fit and proper person[s] and . . . capable of caring for and maintaining the child." *Michelson*, 41 Wn.2d at 721. The Averys thus were persons entitled to preference to custody.

DSHS criticizes the Averys for not taking action earlier; that criticism is unfounded. When the goal at the dependency is to reunify the nuclear family, it is logical that an appeal as to placement would be futile at the dependency hearing when the grandparents are in Arkansas. Also, the Averys could well reason that as they were not parties at the termination proceeding, they would have very little stake in the outcome at the termination proceeding of the mother; and as they are not parties, they have no right to appeal the termination action. Indeed, the first time they had a legal right to appeal was following the trial court's denial of their petition to adopt.

Arguably, there is a pattern of frustration by DSHS of the Averys' attempts to have a meaningful relationship with B.T. since the dependency was filed. Specifically, DSHS personnel did not return Mrs. Avery's phone calls; on visits by Mrs. Avery to Washington in 1999 and 2000, DSHS limited her access to B.T. to a total of three hours supervised visitation; and DSHS resisted an ICPC home study for over one year. When this is coupled with the fact that DSHS did not send the Averys notice of hearings, it is clear that DSHS had already made a decision to disregard the availability of the Averys for placement or adoption. This is arbitrary and capricious even under the *G.C.B.* standard.

In conclusion, we disagree with the dicta in *G.C.B.* that there are only three conditions that allow standing in adoption cases. We hold that if a grandparent petitions for adoption following a termination, he or she has standing without the imprimatur of DSHS to petition for an evidentiary hearing for adoption. This is because there is a presumption that they are the natural guardians. The trial court erred in dismissing the Averys' petition to adopt B.T.

## IV. Attorney Fees

■ Finally, the Averys seek their attorney fees and costs on appeal. They claim that DSHS failed to communicate with them, refused to provide information, and failed to notify them of hearings, thereby obstructing their efforts to obtain placement of B.T. Although a party's recalcitrance or obstructionist attitude might support an award of attorney fees,[3] the Averys have failed to prove that DSHS's actions were motivated by anything other than B.T.'s best interests. Thus, we decline to award attorney fees on this basis.

Reversed and remanded for a full hearing consolidated with any other adoption petition. In light of DSHS's previous actions, we recommend that the hearing take place after a period of time when the Averys have sufficient court-regulated contact with B.T. as to form a basis for the court to evaluate B.T.'s best interests.

QUINN-BRINTNALL, A.C.J., and SEINFELD, J., concur.

Review granted at 148 Wn.2d 1008 (2003).

---

[3] *See Barr v. Day*, 69 Wn. App. 833, 842 n.7, 854 P.2d 642 (1993), *aff'd in part, rev'd in part*, 124 Wn.2d 318 (1994); *Eide v. Eide*, 1 Wn. App. 440, 445-46, 462 P.2d 562 (1969).