[No. 72809-7. En Banc.]
Argued May 13, 2003. Decided October 30, 2003.

*In the Matter of the Adoption of* B.T.

GARY AVERY, ET AL., *Respondents*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Petitioner*.

*Christine O. Gregoire, Attorney General*, and *Timothy M. Jaasko-Fisher* and *Sheila M. Huber, Assistants*, for petitioner.

*Gary A. Preble* (of *Preble Law Firm*), for respondents.

*Mark M. Demaray* and *Albert G. Lirhus* on behalf of American Academy of Adoption Attorneys, amicus curiae.

*Randel A. Jones* on behalf of AARP, amicus curiae.

ALEXANDER, C.J. — The Washington State Department of Social and Health Services (DSHS) seeks review of a Court of Appeals decision reinstating an adoption petition brought by Gary and Dorothy Avery, grandparents of B.T., a child whose parents' rights had been terminated. The Court of Appeals held that as B.T.'s grandparents, the Averys are her "natural guardians," which gave them both standing to seek adoption and preference in the adoption decision, subject to the child's best interest. We conclude that grandparents who seek to intervene in a posttermination adop-

tion proceeding have standing via statute; however, their petition is not afforded preferential status. Therefore, we affirm the Court of Appeals in part and reverse it in part.

I

B.T. was born on August 3, 1995, to Robin Taylor and Mark Maynard Todd. B.T. is one of four children born to Taylor. When B.T. was two years old, DSHS removed her from Taylor's care because Taylor was deemed to be addicted to drugs and unable to provide adequate care for B.T. B.T. was placed with a licensed foster care provider, Bambi Sotak. Sotak is the sister of Taylor's then-boyfriend and is the aunt of B.T.'s half-brother, K.S.

Dorothy Todd Avery and Gary Avery are the paternal grandmother and step-grandfather of B.T. They currently reside in Arkansas where Mr. Avery is employed, but are planning to move to Washington State in the future. During B.T.'s dependency action, the Averys contacted various DSHS caseworkers and administrators and offered themselves as a temporary or permanent placement for B.T. DSHS denied the Averys' pretermination request to have B.T. placed in their home because, at the time, DSHS was still trying to reunite B.T. with her mother.

After unsuccessfully trying to reunite B.T. with Robin Taylor, DSHS commenced an action in Thurston County Superior Court to terminate Taylor's parental rights. In April 2000, the Averys filed a motion to intervene in the termination action, which the superior court denied. However, in July 2000, the Averys were able to obtain interested party status and the superior court ordered that they should be given written notice of all hearings and legal proceedings regarding B.T.

In July 2000, B.T.'s parents' parental rights were terminated. Despite the July 2000 order, the Averys did not receive written notice of any hearings regarding B.T. After the termination of parental rights was completed, the Averys contacted DSHS seeking to have B.T. placed with

them. Mrs. Avery's phone calls and letters went unheeded. The Averys eventually filed a petition to adopt B.T. in August 2000. In October 2000, the superior court received Sotak's petition to adopt B.T. DSHS supported this petition.

Thereafter, the superior court heard argument on both the Averys' and Sotak's adoption petitions. At this hearing, the Averys requested an evidentiary hearing to determine whether they should be considered for adoption of B.T. rather than Sotak. DSHS argued that it was a legal question and, therefore, did not require an evidentiary hearing. The superior court denied the Averys' request for an evidentiary hearing, concluding that they failed to show that DSHS acted arbitrarily in its decision to place B.T. for adoption with Ms. Sotak. The superior court also dismissed the Averys' adoption petition and approved Sotak's petition, stating that the Averys lacked standing to maintain their adoption petition because they do not meet the definition of " 'prospective adoptive parents' " as set out in *In re Dependency of G.C.B.*, 73 Wn. App. 708, 870 P.2d 1037, *review denied*, 124 Wn.2d 1019, 881 P.2d 254 (1994). Clerk's Papers at 49. The Averys filed a motion for reconsideration, which was denied by the superior court on December 4, 2000.

The Averys appealed to Division Two of the Court of Appeals, which reversed the superior court's decision and remanded for a full adoption hearing. *In re Adoption of B.T.*, 112 Wn. App. 143, 144, 47 P.3d 188 (2002), *review granted*, 148 Wn.2d 1008, 62 P.3d 889 (2003). The Court of Appeals held that as B.T.'s grandparents, the Averys are her "natural guardians," which gave them standing to seek adoption and gave them preference in the adoption decision, subject to the child's best interest. *Id.* at 150-51. DSHS petitioned this court for review of the Court of Appeals decision. The Averys cross-petitioned this court for review of the Court of Appeals denial of their request for attorney fees. We granted both petitions for review.

## II

We must initially determine whether to grant motions by both DSHS and the Averys to consider additional evidence, or, alternatively, take judicial notice of conclusions of the superior court in other pending actions involving B.T.[1] These motions were passed to the merits.

 Per the Rules of Appellate Procedure (RAP), we may take and consider additional evidence on the merits if:

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a). Further, Rules of Evidence (ER) allow us to take judicial notice of adjudicative facts. *See* ER 201. A judicially noticed fact is one that is not subject to reasonable dispute because it is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b).

DSHS asks us to consider a March 21, 2003, order of the superior court entered in B.T.'s ongoing dependency action. This order followed a full evidentiary hearing by the superior court to consider issues relating to placement of B.T. The purpose of this hearing was to ensure that B.T.'s adoption could proceed immediately following our decision in this appeal. The Averys, DSHS, Ms. Sotak, and B.T. were

---

[1] B.T. is the subject of four separate, but related, proceedings in the Thurston County Superior Court: (1) an ongoing juvenile dependency action, (2) a termination action, (3) an adoption action initiated by the Averys, and (4) an adoption action initiated by Ms. Sotak. Only the Averys' adoption action is at issue in this case.

each represented at this hearing, and none of these parties objected to the proceeding. Each party was also given the opportunity to present evidence. The additional evidence DSHS wishes us to consider includes the superior court's conclusions that: (1) the Averys are " 'fit and proper' " persons and are capable of caring for a child, (2) it is not in the best interest of B.T. to be removed from Ms. Sotak's home, and (3) DSHS fully and fairly considered the Averys' requests for placement, and beyond a reasonable doubt, DSHS' preadoptive planning for B.T. was not arbitrary and capricious. Thurston County Super. Ct. Order No. 98-7--00556-0, at 3 (Mar. 21, 2003).

DSHS fails to meet the requirements of RAP 9.11(a) because the facts it seeks to bring to our attention do not help us resolve the issues before us. The central issue of this case is whether the Averys, as grandparents, have standing to maintain an action to adopt their grandchild, B.T. We fail to see how the legal conclusions the superior court made in an evidentiary hearing have any direct bearing on that issue. Thus, we are not inclined to consider this additional evidence.

DSHS' request that we take judicial notice of the superior court's order in the dependency action, pursuant to ER 201, also lacks merit. We may take judicial notice of the record in the case presently before us or "in proceedings engrafted, ancillary, or supplementary to it." *Swak v. Dep't of Labor & Indus.*, 40 Wn.2d 51, 53, 240 P.2d 560 (1952). However, we cannot, while deciding one case, take judicial notice of records of other independent and separate judicial proceedings even though they are between the same parties. *Id.* at 54. Here, although the dependency action and the adoption proceeding concern B.T., we decline to take judicial notice of the superior court's order in the dependency action because they are two separate judicial proceedings.

In turn, the Averys request that we consider B.T.'s parents' petitions to relinquish custody, consent to termination/adoption, and waiver of right to receive notice of proceedings, all of which were filed in the superior court on

July 19, 2000, by Ms. Taylor, and July 20, 2000, by Mr. Todd. Alternatively, the Averys ask this court to take judicial notice of the relinquishments and memorandum of Mr. Todd. Finally, the Averys ask this court to consider the memorandum of father in support of paternal grandparents' motions to intervene as a party for concurrent jurisdiction and for placement, which was filed in the superior court on March 28, 2000. For reasons we have stated in regard to DSHS' motion to consider additional evidence, or in the alternative, take judicial notice, we also deny the Averys' motion.

III

DSHS contends that the Court of Appeals erred in concluding that the Averys had standing in the adoption proceeding as B.T.'s "natural guardians." It asserts that standing should be limited to those who meet the definition of "prospective adoptive parent" as defined in *G.C.B.* To apply the natural guardian theory, DSHS argues, does not serve the best interest of the child.

We agree with the Court of Appeals that the Averys have standing in this case. We do not agree, however, that the Averys' standing derives from the natural guardian theory; rather it is found in chapter 26.33 RCW (adoption statute).

■■ Because the process of adoption is a creature of statute, the adoption statutes must be strictly followed. *See In re Adoption of Henderson*, 97 Wn.2d 356, 358, 644 P.2d 1178 (1982) (adoption is a statutory procedure and action taken by court must be measured by statutory language); *Taylor v. Taylor*, 58 Wn.2d 510, 511-12, 364 P.2d 444 (1961). We recognize that while the adoption process is a creature of statute, it is not such a technical one that the trial court is left without power to conduct evidentiary hearings to procure significant evidence or facts before granting or denying an adoption petition, and to allow the intervention of appropriate and interested parties. *In re Adoption of Baby Girl Doe*, 45 Wn.2d 644, 649, 277 P.2d 321 (1954).

However, the issue before us today is whether grandparents have standing to even petition the court for the adoption of their grandchild. This threshold question is best answered by statute. Therefore, we look to the statutes to define standing in the adoption process.

■■ It is important to note that the intent behind the adoption statute is clear: "to provide stable homes for children." RCW 26.33.010. The guiding principle behind the adoption process is to determine what is in the best interest of the child. In examining the adoption statutes, chapter 26.33 RCW, we find that the standing requirement is very broad. RCW 26.33.140 (entitled "Who may adopt or be adopted") provides that "[a]ny person who is legally competent and who is eighteen years of age or older may be an adoptive parent." RCW 26.33.140(2). Under this broad statutory provision, we hold that the Averys have standing to petition the court for adoption of B.T.

The adoption statutes do not define who is a "prospective adoptive parent." DSHS urges us to recognize *G.C.B.* and that standing should be limited to those who meet the *G.C.B.* definition of "prospective adoptive parent." In *G.C.B.*, the mother of a minor child, whose parental rights had been terminated, and her husband filed a petition for adoption of the child who had been placed in foster care by DSHS. The trial court ordered that the child be placed with his birth mother and her husband in order for a postplacement adoption study to be conducted. Division One of the Court of Appeals reversed the trial court and dismissed the petition for adoption by holding that the mother did not have standing because her rights were "terminated by a valid and subsisting order entered pursuant to RCW 13.34."[2] *G.C.B.*, 73 Wn. App. at 716.

---

[2] RCW 13.34.200 deprives a parent, whose parental rights have been terminated, of standing in all future legal proceedings concerning the child:

"Upon the termination of parental rights[,] . . . all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support existing between the child and parent shall be severed and terminated *and the parent shall have no standing to appear at any further legal proceedings concerning the child* . . . ." RCW 13.34.200(1) (emphasis added).

The *G.C.B.* court found that the trial court's ruling was "so contrary to established principles in the law of adoption" that it felt compelled to comment further on the issue of standing. *Id.* at 718. In dicta, the *G.C.B.* court urged the legislature to define the statutory term " 'prospective adoptive parent.' " *Id.* at 722.[3] It went further and provided its suggestion of how to define the term and proffered that a would-be petitioner may maintain an adoption proceeding in three circumstances: (1) if the custodian (i.e., DSHS) consents; (2) if consent is not forthcoming, and if the child had been at some point placed in the would-be petitioner's care; and (3) where the custodian's preadoptive planning is so utterly devoid of merit as to constitute an arbitrary and capricious exercise of authority or where the custodian fails to take any preadoptive planning measures whatsoever.

Here, in reversing the superior court's decision, the Court of Appeals indicated that it did not disagree with the three factors articulated in *G.C.B.*, but rather, it disagreed with the *G.C.B.* court's holding that standing to seek adoption is *limited* to only three circumstances. *B.T.*, 112 Wn. App. at 149-50. The Court of Appeals held that the *G.C.B.* court failed to take into account this court's holding in *State ex rel. Michelson v. Superior Court*, 41 Wn.2d 718, 251 P.2d 603 (1952), which recognized the theory of natural guardianship. Thus, the Court of Appeals opined, there is another circumstance by which a prospective adoptive parent may have standing—natural guardianship.

 As stated clearly above, the adoption process is a creature of statute and in determining proper standing, we must look to the statute. We are not obligated to take into account the *G.C.B.* definition of "prospective adoptive parent" because it is dicta.[4] In holding that the Averys lack standing, thereby denying them the right to even be *con-*

---

[3] In other contexts, the legislature has relied on the definition of "prospective adoptive parent, as defined in RCW 26.33.020." *See* former RCW 43.43.830(1)(c) (2002), *amended by* Laws of 2003, ch. 105, § 5. However, no such definition is provided.

[4] DSHS points out that this court has cited *G.C.B.* with approval in *McKinney v. State*, 134 Wn.2d 388, 950 P.2d 461 (1998). *McKinney*, however, did not present

*sidered* in the adoption process, the superior court undermined the intent of the legislature to always consider the best interest of the child in matters of adoption. Therefore, we hold that a grandparent who seeks to intervene in a posttermination adoption proceeding has standing to do so, so long as the requirements of RCW 26.33.140 are met.[5]

## IV

Although we find that RCW 26.33.140 permits the Averys to have standing, we cannot agree with the Court of Appeals that grandparents are given preference in the adoption process. To give one party preference in the adoption process would undermine the guiding principle of adoption—determining what is in the best interest of the child. In examining petitions for adoption for each child, it is the role of the trial court to make such determination. Although the court may take into consideration bloodlines and family petitions, this consideration must never be paramount to the court's consideration of the child's best interest and welfare. *See In re Welfare of Schulz*, 17 Wn. App. 134, 144, 561 P.2d 1122 (1977) (no preference to grandparents is ever superior to the right of the child to have his or her best interest and welfare protected).

The Averys argue that they have preferential status per *Michelson*. In *Michelson*, a grandmother sought custody of her grandchild after the rights of the child's parents were terminated. Because of the grandmother's health problems, the trial court denied custody. The grandmother appealed the trial court's decision arguing that the trial court failed

---

the issue of a contested adoption proceeding. The *G.C.B.* factors were adopted only in essence as applied to RCW 26.33.350 and RCW 26.33.380, which relate to medical reports and family and social history reports of the child. *McKinney*, 134 Wn.2d at 402-03. Thus, the application of the *G.C.B.* definition of prospective adoptive parent was limited only to the circumstances presented in that case.

[5] Our opinion regarding grandparent standing is limited to those situations where the grandparents have properly petitioned the trial court to intervene in dependency, termination and/or adoption proceedings relating to their grandchild. This is not to say that all grandparents, because of their status as grandparents, are entitled to receive notice of such proceedings. To receive notice, all statutory requirements of intervention must be met.

to give proper recognition to her legal status as a blood relative of the child. This court agreed and held that when the child's parents' parental rights were terminated, the grandmother became the child's natural guardian and was entitled to custody if she was deemed a fit and proper person capable of caring for the child. This court recognized the view that "the principle of natural guardianship is one designed to maintain the family structure and should be applied by the courts unless clearly inconsistent with the welfare of the child." *Michelson*, 41 Wn.2d at 721.

After carefully examining *Michelson*, we conclude that the opinion is inconsistent with the intent of the adoption process: to determine what is in the best interest of the child. If preference is given to grandparents, it would imply that placing the child with the preferential party would presumptively be in the best interest of that child, which may not necessarily be the case. Although the child's present and future relationships with blood relatives is an important factor that may be considered, it should not be the overriding factor when determining placement. Rather, the trial court must weigh *all* factors relating to the child to determine where the proper placement would be. Granting a posttermination preference to grandparents may jeopardize the best interest of the child standard.

We also note that *Michelson* was decided in 1952. At that time, the juvenile dependency statute gave courts broad discretion, yet little guidance in dealing with dependents and their parents. Thus, it was completely left to the courts to decide where a child should be placed. *See* former RCW 13.04.090 (1956), *repealed by* LAWS OF 1961, ch. 302, § 17 (the court had the power to make any order that would promote the child's health and welfare). Over the years, the dependency and adoption laws have been overhauled in the state of Washington. *See* LAWS OF 1984, ch. 155. Currently, the statutes now reflect an emphasis on permanency planning for the child, maintaining stability for the child, involvement of birth parents in permanency plan, an effort toward identification and involvement of relatives, and respect for

consideration of the role of agencies in placing children. *See generally* ch. 13.34 RCW. Thus, giving preference to grandparents per *Michelson* undermines the intent and purposes of the dependency and adoption statutes.

## V

We accepted the Averys' cross-petition for review regarding the Court of Appeals denial of their request for attorney fees on appeal. The Averys argue that they are entitled to attorney fees because DSHS treated them arbitrarily and capriciously throughout this matter. At the appellate level, the Averys argued that they were entitled to attorney fees on equitable grounds because DSHS failed to communicate with them, provide them with pertinent information, and provide them with notices of hearings regarding B.T.

We acknowledge that there is case law that supports the award of attorney fees in instances of a party's recalcitrance or obstructionist attitude.[6] While DSHS' failure to give notice to the Averys and its ignoring of their phone calls and letters was misguided, it appears to us that DSHS' actions were motivated by what it believed were B.T.'s best interests. In this situation, we cannot say that DSHS' actions were so egregious as to dictate an award of attorney fees to the Averys.

## VI

We affirm the Court of Appeals holding that a grandparent has standing in a posttermination adoption proceeding. However, we reverse the Court of Appeals decision to the extent that grandparents are to be given preference in such proceedings. We also affirm the denial of the Averys' request for attorney fees.

---

[6] *See, e.g., Barr v. Day*, 69 Wn. App. 833, 842 n.7, 854 P.2d 642 (1993), *aff'd in part, rev'd in part*, 124 Wn.2d 318, 879 P.2d 912 (1994); *Chapman v. Perera*, 41 Wn. App. 444, 454, 704 P.2d 1224, *review denied*, 104 Wn.2d 1020 (1985); *Eide v. Eide*, 1 Wn. App. 440, 446, 462 P.2d 562 (1969).

This case is remanded to the Thurston County Superior Court for a full hearing consolidated with any other adoption petition.

JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

Reconsideration denied December 24, 2003.