IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of WILLIAM ROSS TAYLOR, | ) ) ) | No. 76444-6-I (Consolidated with No. 76840-9-I) |
| Deceased. | ) ) | DIVISION ONE |
| PATRICIA CAIARELLI, | ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | |
| REUBEN TAYLOR, JR., EMILY TAYLOR, and the marital community thereof, | ) ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) | |
| CHARLES E. TAYLOR II and ELIZABETH TAYLOR, | ) ) ) | |
| Defendants. | ) | FILED: May 20, 2019 |

SCHINDLER, J. — This is the third appeal in this case. The legal guardian of

A.C.T., Patricia Caiarelli, filed a Trust and Estate Dispute Resolution Act (TEDRA),

chapter 11.96A RCW, action against Charles E. Taylor II, individually and as the

personal representative of the estate of William Ross Taylor, and Reuben and Emily

Taylor to impose a constructive trust on nonprobate assets. Caiarelli alleged the will

established William's intent to have his brother Charles and his father Reuben hold the

nonprobate assets as trustees for A.C.T.[1] Caiarelli also alleged the family exerted undue influence on William. In the first appeal, we reversed the decision on summary judgment to award three AIG life insurance policies and a Fidelity individual retirement account to Charles as the beneficiary and five Northwestern Mutual life insurance policies to William's father Reuben. On remand, the trial court dismissed the undue influence claims against Reuben and Emily. A jury found William designated Charles to hold the nonprobate assets in trust for A.C.T. and in the alternative, Charles unduly influenced William to designate him as the beneficiary. The trial court entered a judgment on the jury verdict against Charles for $1,422,077.54 and awarded Caiarelli attorney fees and costs. We affirmed the jury verdict but reversed the decision to dismiss the undue influence claim against Reuben and Emily. On remand, a jury found Reuben and Emily exerted undue influence over William to designate Reuben as the owner of the insurance policies. The court entered judgment on the jury verdict in the amount of $451,491.33. Caiarelli requested $1,085,325.29 for attorney fees and costs, including $195,791.78 for attorney fees incurred in the first trial. The court awarded Caiarelli $623,806.70 in attorney fees and costs against Reuben and Emily. Caiarelli appeals the award of attorney fees, arguing the court abused its discretion by deducting attorney fees for delay of the trial and declining to award any attorney fees incurred to preserve the undue influence claim against Reuben and Emily. We affirm in part, reverse in part, and remand.

---

[1] For purposes of clarity, we refer to the Taylor family members by their first names.

TEDRA Action

The facts are set forth in In re Estate of Taylor, 159 Wn. App. 1003, 2010 WL 5464751, and In re Estate of Taylor, No. 68222-9-I (consolidated with No. 68224-5-I) (Wash. Ct. App. May 19, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/ 682229.pdf, and will be repeated only as necessary.

William Ross Taylor and Patricia Caiarelli were married in November 2001. A.C.T. was born in May 2002.

In 2003, William lost his job and Caiarelli filed for dissolution of the marriage. William prepared a will directing that in the event of his death, all of his assets were to be held in trust for his son A.C.T., including the "Charles Schwab accounts (Schwab IRA's,[2] Schwab One, etc.), my Fidelity accounts (401K, ESPP,[3] etc.), and all other checking and savings accounts under my name." William named his brother Charles E. Taylor II as the trustee, his father Reuben Taylor Jr. as the alternative trustee, and his mother Emily Taylor as the second alternative.

The court entered the final decree in the dissolution of the marriage in February 2005.

In July 2005, William started working at a new company. William transferred his Fidelity IRA and named his brother Charles as the primary beneficiary and his father Reuben as contingent beneficiary. William purchased three AIG life insurance policies and designated Charles as primary beneficiary and Reuben as contingent beneficiary. That same month, William also signed a change of owner designation, transferring his ownership of five Northwestern Mutual life insurance policies to his father Reuben.

---

2 Individual retirement accounts.
3 Employee stock purchase plan.

In September 2005, William died in a boating accident. The will was admitted to probate and Charles was appointed as the personal representative of the estate. William's last will and testament made two bequests and left the remainder of his estate to A.C.T. Charles identified the Charles Schwab accounts, Fidelity IRA, and AIG life insurance policies as nonprobate assets. Charles obtained the proceeds of the AIG policies and Fidelity IRA. Reuben obtained the proceeds for the five Northwestern Mutual policies.

In 2006, Caiarelli as the legal guardian of A.C.T. filed a Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, action against Charles individually and as the personal representative of the estate, seeking an order that A.C.T. was entitled to the proceeds of all probate and nonprobate assets identified in the will and owned by William at the time of his death. In November 2008, the court ruled as a matter of law that the Charles Schwab IRA should be distributed to Charles as trustee for A.C.T. In 2009, the court consolidated the probate and TEDRA actions.

On March 9, the court found "extensive mishandling of the Estate."[4] The court removed Charles as the personal representative of the estate and denied the appointment of all Taylor family members to serve as alternate representatives. The court appointed Michael Longyear as the administrator of the estate.

The court ruled on summary judgment that Charles was entitled to the proceeds of the three AIG policies and the Fidelity IRA and Reuben was entitled to the proceeds of the five Northwestern Mutual life insurance policies.

---

[4] Taylor, 2010 WL 5464751, at *2.

First Appeal

In the first appeal, we reversed the summary judgment decision to award the Charles Schwab IRA to Charles as the trustee for A.C.T. We remanded for entry of an order awarding the Charles Schwab IRA to Charles in his personal capacity. We reversed the summary judgment decision that Charles was the owner of the Fidelity IRA and the three AIG polices and that Reuben was the owner of the five Northwestern Mutual insurance policies. We concluded there were material issues of fact whether "William intended to leave these assets to his son by entrusting them to his father and brother in a representative capacity."[5]

On remand, Caiarelli amended the TEDRA petition to also name William's parents Reuben and Emily Taylor and his sister Elizabeth Taylor. Caiarelli alleged the will established William's intent that all his assets be held in a trust for the benefit of A.C.T. and Charles, Reuben, Emily, and Elizabeth unduly influenced William to transfer assets to Charles and Reuben.

Judge James Rogers presided over the November 2011 trial. The court dismissed the claims against Emily and Elizabeth early in the trial. The court dismissed the claims against Reuben at the end of the plaintiff's case. The jury returned a verdict against Charles. The jury found William intended to designate Charles as the trustee for A.C.T. for the Fidelity IRA and the AIG policies and alternatively, that Charles unduly influenced William to designate him as beneficiary. The court entered judgment on the jury verdict against Charles for $1,422,077.54.

---

[5] Taylor, 2010 WL 5464751, at *5-*6.

Caiarelli filed a motion for an award of $983,972.46 in attorney fees and costs under TEDRA, RCW 11.96A.150. The court awarded "discretionary" attorney fees and costs against Charles for the petitioner Caiarelli in the amount of $525,344.46 and against the estate for the special personal representative in the amount of $400,963.13.

The court entered extensive findings of fact and conclusions of law on the award of attorney fees under TEDRA. The court used a "percentage reduction" in reducing the amount of fees awarded.

24. Caiarelli counsel acknowledge that some of the fees claimed for the claims against Emily . . . during the time period December 2004 - August 2005 should be deducted but unfortunately, the general entries in counsel time records allow only some of that time to be specifically accounted for by time entries, because some of the work for trial was done for various parties at once.
25. Caiarelli counsel acknowledge that some of the fees claimed for the claims against Reuben W. Taylor, Jr. should be deducted, but unfortunately, the general entries in counsel time records allows only some of that time to be specifically accounted for by time entries, because some of the work for trial was done for various parties at once.
26. There was some commonality of fact on the monetary claims against Charles E. Taylor, II and Reuben W. Taylor, Jr.

The court concluded, "[R]easonable billing judgment was not always exercised" and reduced the fees by 10 percent. The court further "offset[ ] the remaining TEDRA" attorney fees by 30 percent to take into account "the claims lost at trial" and time spent on unsuccessful or unnecessary work, including "some reduction in fees for time on claims against Emily and Elizabeth Taylor."

Charles appealed the order denying the motion for judgment notwithstanding the verdict, and Caiarelli cross-appealed the decision to dismiss Reuben and Emily.

Second Appeal

In the second appeal, we affirmed the judgment on the verdict and the award of attorney fees against Charles but reversed dismissal of the claim of undue influence against Reuben and Emily. We concluded the trial court erred by excluding evidence of undue influence that was discovered during trial and should have been admitted. The court remanded for trial on whether Reuben and Emily exerted undue influence over William. We awarded attorney fees and costs on appeal against Charles, Reuben, and Emily under TEDRA.

On remand, the case was reassigned to another judge. After a five-day trial in 2016, the jury found Reuben and Emily exerted undue influence over William to "gift the five (5) Northwestern Mutual Life Insurance policies" to Reuben. The court entered judgment on the jury verdict for the principal amount of $193,184.77 and prejudgment interest in the amount of $258,306.56. The court imposed a constructive trust in favor of A.C.T. in the amount of $451,491.33, plus post interest in the amount of 12 percent per annum."[6]

Caiarelli filed a motion for an award of $1,085,325.29 in attorney fees and costs under TEDRA, RCW 11.96A.150. Caiarelli argued the court should award "all attorney fees requested by" Caiarelli's counsel for work performed related to the 2016 trial and the $195,791.78 Judge Rogers deducted for the claims against Reuben and Emily. Caiarelli asserted the 2012 order states the "fees requested" by Caiarelli's counsel "were reasonable," "the claims against Reuben and Emily which were lost have now been won," and the court should award prejudgment interest on the $195,791.78."

---

[6] Reuben and Emily paid the judgment.

In opposition, Reuben and Emily argued the court should reduce the amount of fees awarded to Caiarelli, taking into account the amount in controversy, late disclosure of an expert witness resulting in "double trial preparation," and duplicative billing.

On March 20, 2017, the court entered an order awarding Caiarelli attorney fees of $605,842.00 and costs of $17,964.48. The court concluded Caiarelli "should in equity be awarded attorney fees and costs for the work her attorneys performed." The court found the hourly rates of the attorneys for work performed during the 2016 trial were reasonable. The court deducted attorney fees for three different categories: (1) "[W]ork on motions that were either unsuccessful or which were never presented to the Court," (2) "work performed between June 24, 2016 and October 10, 2016 (a delay caused by an untimely disclosure of Dr. Duthie as an expert witness)," and (3) work during and after trial that "the Court deemed to be duplicative of work performed by other attorneys."

The order states the court "declines to award any of the legal fees incurred by Ms. Caiarelli in conjunction with the November 2011 trial." The court rejected the argument that Caiarelli was entitled to an award of $195,791.78. The court states there is "no finding by Judge Rogers that these fees were reasonable," the evidence presented in the 2016 trial "was significantly different," and additional "extensive legal research was performed before to the second trial, indicating that what had been done previously was of little use in the second trial."

Third Appeal

Caiarelli appeals the 2017 "Order on Petitioner's Motion for Attorney Fees [and] Costs." Caiarelli contends the court abused its discretion by reducing the award of fees

for the work performed between June 24, 2016 and October 10, 2016 and declining to award attorney fees of $195,791.78 for work performed in the first trial related to the undue influence claim against Reuben and Emily.

RCW 11.96A.150 gives the trial court the discretion to award attorney fees.[7] RCW 11.96A.150(1) states:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

"In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1). We review a trial court's decision to award attorney fees under TEDRA for an abuse of discretion. In re Estate of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004).

We will uphold an attorney fee award unless the trial court manifestly abused its discretion. Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

---

[7] Because the unambiguous language of RCW 11.96A.150 gives the court the discretion to award attorney fees, we reject Caiarelli's argument that review is de novo.

We review findings of fact to determine whether the findings are supported by substantial evidence and support the trial court's conclusions of law. In re Estate of Hayes, 185 Wn. App. 567, 609, 342 P.3d 1161 (2015); 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 720, 281 P.3d 693 (2012).

Reduction of Fee Award for Trial Delay

Caiarelli contends the court erred by reducing the award of fees for work performed during a three and a half-month trial delay between June 24 and October 10, 2016.

"A determination of reasonable attorney fees begins with a calculation of the 'lodestar' "—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. 224 Westlake, 169 Wn. App. at 734. The court should discount hours "spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). The trial judge " 'who has watched the case unfold . . . is in the best position to determine which hours should be included' " and excluded from an award of reasonable attorney fees. 224 Westlake, 169 Wn. App. at 735[8] (quoting Chuong Van Pham, 159 Wn.2d at 540).

Caiarelli contends the disclosure of expert witness Dr. Bruce Duthie was not untimely and the billing records do not support the amount of the deduction. The record does not support her argument.

---

[8] Alteration in original.

On remand, the parties agreed to a trial date of May 11, 2015. After granting Caiarelli's motion to conduct additional discovery, the court continued the trial to September 28, 2015. The new case schedule states, "Both parties have filed disclosures" for primary witnesses. The court set July 6, 2015 as the deadline for disclosure of possible additional witnesses.

On July 6, Caiarelli filed the "Disclosure of Possible Primary and Additional Witnesses." Caiarelli identified Dr. James K. Boehnlein as a possible expert witness:

> Dr[.] Boehnlein is an expert in human psychiatry. He has testified in both federal and state courts. His expertise is the result of knowledge gained from his education, training, and teaching and practice in medical specialty of psychiatry. . . .
>
> . . . .
>
> Qualifications: Medical doctor teaching and practicing psychiatry.

Caiarelli described the anticipated testimony of Dr. Boehnlein as follows:

> Based upon his education, training and experience as medical psychiatrist, Dr. Boehnlein may provide an expert opinion based on reasonable medical probability/ more likely than not, that William R Taylor's [sic] was suffering from anxiety/depression and likely more easily influenced by his Taylor family members than he likely would have been but for the anxiety/depression and significant stresses he was experiencing.

Reuben, Emily, and personal representative Longyear entered into settlement discussions in July. The court ordered Caiarelli to participate "in any mediation" and instructed "all parties and counsel" to "negotiate in good faith." Reuben, Emily, and Longyear entered into a CR 2A agreement and filed a motion to approve the settlement.

The court struck the September 2015 trial date pending a decision on whether the personal representative has authority "to settle TEDRA claims against" Reuben and Emily "without the agreement of" Caiarelli. The court ruled Caiarelli was a necessary

party and denied the motion to approve the CR 2A agreement. The court rescheduled the trial date for June 27, 2016.

Approximately eight months later on May 20, 2016, Caiarelli filed a Disclosure of Possible Primary and Additional Witnesses. For the first time, Caiarelli identified Dr. Duthie as a possible expert witness:

> Dr. Duthie is an expert clinical psychologist and forensic psychologist. He has testified in both federal and state courts. His expertise is the result of knowledge gained from his education, training, teaching and practice. In addition to his private practice, Dr. Duthie taught Forensic Psychology and psychological evaluations at Antioch University, Seattle, in its Psychology Doctorate program.
>
> . . . .
>
> Qualifications: Clinical and Forensic Psychologist. Board certified by American Board of Forensic Psychology.

Caiarelli provided the following description of the anticipated testimony for Dr. Duthie:

> Based upon his education, training and expertise as a clinician and forensic psychologist, Dr. Duthie may testify and provide expert opinions based on reasonable psychological probability, more likely than not, that William R. Taylor was suffering from psychosis, anxiety/major depression and was more easily influenced by his Taylor family members than he likely would have been but for his mental illness and significant stresses he was experiencing.

On May 31, Caiarelli filed a witness list identifying Dr. Duthie as an expert witness at trial.

Before trial, Reuben and Emily filed a motion in limine to exclude the testimony of Dr. Duthie. Reuben and Emily argued Dr. Duthie "was not previously disclosed as a witness" and Caiarelli "never supplemented discovery responses with the scope and basis of the testimony now sought to be offered."

At the hearing on the motion in limine, Caiarelli argued Dr. Boehnlein "could not be available to testify in this time frame, so we substituted" Dr. Duthie. Caiarelli argued the testimony of Dr. Duthie "is identical to the witness that was disclosed and laid out in the July 2015 disclosure. The only thing that changed is the name."

The court denied the motion to exclude Dr. Duthie's testimony. The court ruled, "Testimony from a psychologist with regard to what the health records reveal as to William's mental state is incredibly relevant; it's the crux of the undue influence claim." But the court ruled that Reuben and Emily should have "the opportunity to question this specific" witness because he "could have completely different reactions, professionally, to the records." The court continued the trial to October 17, 2016.

King County Local Civil Rule (KCLCR) 26(k)(1) states, "Each party shall, no later than the date for disclosure designated in the Case Schedule, disclose all persons with relevant factual or expert knowledge whom the party reserves the option to call as witnesses at trial." For expert witnesses, the party must include "[a] summary of the expert's opinions and the basis therefore and a brief description of the expert's qualifications." KCLCR 26(k)(3)(C). The case schedule in this case required the parties to disclose all possible primary witnesses by February 23, 2015 and all possible additional witnesses by July 6, 2015. Caiarelli did not disclose Dr. Duthie as a witness until almost a year later on May 20, 2016.

Caiarelli argues she timely disclosed and "substantially complied" with the disclosure requirements because the description of the anticipated testimony from Dr. Duthie "was essentially identical" to Dr. Boehnlein's. The uncontroverted record supports finding Caiarelli did not timely disclose Dr. Duthie as a witness. Caiarelli's

argument also ignores the trial court finding that Dr. Duthie is a different expert witness with different qualifications and bases for his opinions.

Caiarelli contends the trial court abused its discretion by taking "block deductions," rather than reducing the attorney fee award to only specific billing entries that were for work "related to Dr. Duthie," for work performed between June 24 and October 10, 2016. The record shows the court did not reduce the attorney fee award for work related specifically to Dr. Duthie. The court deducted fees incurred as a result of the delay of the trial from June 24 to October 10 that resulted in both parties "preparing for trial twice."[9]

The court did not abuse its discretion by deducting attorney fees for work performed between June 24, 2016 and October 10, 2016.

### Denial of Attorney Fees Incurred in First Trial

Caiarelli contends the court abused its discretion in declining to award attorney fees of $195,791.78 incurred in the first trial for the undue influence claim the court dismissed against Reuben and Emily.

Below, Caiarelli argued she was entitled to prejudgment interest on the amount Judge Rogers deducted of $195,791.78. Caiarelli asserted the court "should award the $195,791.78 which Judge Rogers deducted for the claims against Reuben and Emily which he dismissed." Caiarelli argued, "If the Guardian had not litigated the case against Reuben and Emily Taylor prior to and during the November 2011 trial, she would have lost the proceeds from the Northwestern Mutual policies."

---

[9] Likewise, the record does not support Caiarelli's argument that the court deducted attorney fees as sanctions against Caiarelli for discovery violations.

The order states, "This Court declines to award any of the legal fees incurred by Ms. Caiarelli in conjunction with the November 2011 trial." The court rejected the assertion that Judge Rogers found the $195,791.78 that he deducted "were reasonable."

> This case first went to trial before Judge Jim Rogers in November 2011. Ms. Caiarelli prevailed on her claims against William's brother Charles, but her claims against Reuben and Emily Taylor were dismissed at the conclusion of trial. When awarding attorney fees against Charles, Judge Rogers deducted $195,791.78 from Ms. Caiarelli's fee request, finding that this sum was either work attributable to the dismissed claims against Reuben and Emily Taylor or was unnecessary or unreasonable. Ms. Caiarelli contends that Judge Rogers determined that the entire amount of the fees were reasonable, just not recoverable due to the dismissal of the claims. This Court disagrees. There was no finding by Judge Rogers that these fees were reasonable. In fact, he concluded that from July 2011 to November 1, 2011, counsel did not use reasonable billing judgment and reduced all fees requested by 10 percent. He then reduced the fees billed by another 30% to take into consideration claims lost at trial. That is the extent of the trial court's prior ruling on the legal fees incurred to prosecute claims against Reuben and Emily Taylor.[10]

Substantial evidence supports the court's finding. Judge Rogers found the general billing records made it "impossible" to "separate time spent" on the dismissed claims "by time entry only." Judge Rogers found the "amount of fees and costs" billed by Caiarelli's counsel from filing the TEDRA action reasonable but "reasonable billing judgment was not always exercised by Caiarelli counsel." Judge Rogers notes the billing records demonstrate "the general 'kitchen sink' approach taken" and reduced the fee request by 10 percent. The findings state that from July 2011 to trial, counsel "have billed essentially full time, with what appears to be no regard to cost or other usual legal business constraints." Judge Rogers further reduced the attorney fee award by 30 percent, or $195,791.78, "for the claims lost at trial" against Reuben and Emily and for

---

10 Emphasis in original.

15

unsuccessful and unnecessary work. For example, the court notes Caiarelli "moved very late for a trial continuance in the fall of 2011" that resulted in added expense, and the parties incurred fees as "the result of Caiarelli counsel's unsuccessful motion practice." The findings also state that Caiarelli's expert "note[d] billing errors or matters billed unrelated to the issues herein" and that Caiarelli conceded in briefing that fees "should be deducted for the unsuccessful Schwab appeal before trial." Further, in the motion for reconsideration, Caiarelli concedes, "Judge Rogers did not enter a specific finding stating that the 30% of the fees which he declined to award against Reuben and Emily Taylor were reasonable."[11]

We reject the argument that the law of the case doctrine required the court to award $195,791.78 in attorney fees. Caiarelli asserts the "rule from the 2014 opinion was that all reasonable fees should be awarded to [Caiarelli]" if she "prevailed at the subsequent trial" on the undue influence claim. The law of the case doctrine "refers to 'the binding effect of determinations made by the appellate court on further proceedings in the trial court on remand.'" Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 113, 829 P.2d 746 (1992) (quoting 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: JUDGMENTS § 380, at 55 (4th ed. 1986)). Although we awarded attorney fees on appeal under RCW 11.96A.150, we did not address the award of attorney fees if Caiarelli prevailed at trial.

---

[11] Because substantial evidence supports the court's findings, Caiarelli is not entitled to prejudgment interest.

The court also found that the evidence presented in the second trial was "significantly different" and that "very little of the legal work for the first trial was relied on in the second trial."

> First, from this Court's review of the November 2011 trial minutes and its observation of the 2016 trial, the evidence presented by Ms. Caiarelli was significantly different. In the first trial, counsel had no psychological expert to testify about the impact of William's mental state on his decision-making when making inter vivos gifts. In the second trial, Ms. Caiarelli presented the testimony of Dr. Duthie on this issue. In the first trial, Ms. Caiarelli did not call her divorce attorney to testify about the dissolution decree and William's obligation to provide life insurance sufficient to cover his child support obligation to [A.C.T.]. This testimony was presented in the second trial. This Court finds that very little of the legal work for the first trial was relied on in the second trial. Counsel's billing statements show that extensive legal research was performed before the second trial, indicating that what had been done previously was of little use in the second trial. For these reasons, the Court rejects the fee request of $195,791.78 in attorney fees incurred in the November 2011 trial. Because the Court refuses to award this sum, it need not address Ms. Caiarelli's contention that she should be awarded prejudgment interest on this sum.

Caiarelli contends substantial evidence does not support the finding that the evidence presented in the 2011 trial was significantly different from the evidence presented in the 2016 trial. Substantial evidence supports finding that the evidence presented in 2011 was "significantly different" than in 2016.

Preliminarily, we reject Caiarelli's argument that the court erred by considering the trial minutes from the 2011 trial. The minutes of the 2011 trial are a part of the record.[12] See In re Adoption of B.T., 150 Wn.2d 409, 415, 78 P.3d 634 (2003).

The record shows that unlike the first trial, the second trial focused exclusively on the claim that Reuben and Emily unduly influenced William to change ownership of the

---

[12] CJC 2.9(C) states, "A judge shall not investigate facts in a matter pending or impending before that judge, and shall consider only the evidence presented and any facts that may properly be judicially noticed, unless expressly authorized by law."

five Northwestern Mutual insurance policies. In the second trial, Caiarelli presented new evidence of phone records and charts showing the extent of the communication between William, Reuben, and Emily during the summer of 2005. Dr. Duthie presented extensive expert testimony about William's mental state in the months leading to his death in September 2005.

Although substantial evidence supports the court's finding that the evidence at the second trial was significantly different and that Judge Rogers did not find the $195,791.78 was either reasonable or the deduction was only related to the dismissed claims, we conclude the court abused its discretion in declining to award any reasonable attorney fees for the work that resulted in preserving the claim against Reuben and Emily of undue influence over William. The 2012 order awarding fees notes the "issues surrounding the various Northwestern Mutual Life Insurance policies were separate facts and occupied significant time and effort by the parties." Following the second trial, the court found:

> The work of [plaintiff's counsel] resulted in a substantial benefit to [A.C.T.]'s trust. Without the work of [plaintiff's counsel], there would be no funds to put into a trust for [A.C.T.]. [A.C.T.] would have received no funds from the Northwestern Mutual policies if the Respondents had prevailed.

On remand, the court should award some amount of reasonable attorney fees for the work that preserved the claim against Reuben and Emily of undue influence over William to change ownership of the five Northwestern Mutual insurance policies.

We affirm in part, reverse in part, and remand.[13]

Schindler, J.

WE CONCUR:

Chun, J.

Leach, J.

---

[13] We decline to award Caiarelli attorney fees on appeal under TEDRA.